UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. MANNINA, <br> Plaintiff, <br> v. <br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br> Defendant. | No. 2:17-cv-01850-AC <br><br> ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34.[1]

For the reasons that follow, the court will GRANT plaintiff's motion for summary judgment and DENY defendant's cross-motion for summary judgment.

## I. PROCEDURAL BACKGROUND

On January 24, 2011, plaintiff applied for disability insurance benefits. Administrative Record ("AR") 81.[2] This application was denied in a December 13, 2012 ALJ decision and the

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

[2] The AR is electronically filed at ECF Nos. 11-3 to 11-11 (AR 1 to AR 522).

1

plaintiff did not appeal the denial of benefits. AR 81-90.

Plaintiff filed a second disability insurance benefits application on February 13, 2014. AR 28. This application is currently before the court. The disability onset date was alleged to be June 21, 2010, but was later amended to February 9, 2014. Id. The application was disapproved initially and on reconsideration. Id. On February 9, 2016, ALJ Sara A. Gillis presided over the hearing on plaintiff's challenge to the disapprovals. AR 47-77 (transcript). Plaintiff, who was represented by counsel, was present and testified at the hearing. AR 49. A Vocational Expert ("VE") also testified. Id.

On March 22, 2016, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 28-41 (decision), 42-46 (exhibit list). On July 6, 2017, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-6 (decision and additional exhibit list).

Plaintiff filed this action on September 6, 2017. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 7, 8. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 17 (plaintiff's summary judgment motion), 20 (Commissioner's summary judgment motion).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1964, and accordingly was 50 years old on the alleged disability onset date—as amended at the February 13, 2014 hearing—making him a "person closely approaching advanced age" under the regulations.[3] AR 94. Plaintiff has at least a high school education, and can communicate in English. AR 321, 213. Plaintiff worked as a construction worker from January of 1997 through June of 2010. AR 215.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."

---

[3] See 20 C.F.R. § 404.1563(d) ("person closely approaching advanced age").

2

Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

3

Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff is "disabled" if he is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2014 (Ex. B5D).
>
> 2. [Step 1] The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of February 9, 2014 through his date last insured of December 31, 2014 (20 CFR 404.1571 *et seq.*).
>
> 3. [Step 2] Through the date last insured, the claimant had the following severe impairments: cervical spondylosis and lumbar spondylosis with degenerative disc disease and radiculopathy; history of bilateral knee ligament reconstruction; generalized anxiety disorder and depressive disorder; and mild carpal tunnel syndrome bilaterally (20 CFR 404.1520(c)).
>
> 4. [Step 3] Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b).  The claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds.  The claimant can occasionally kneel and crawl.  The claimant can frequently stoop and crouch.  The claimant can frequently reach overhead bilaterally.  The claimant can frequently finger and feel.  The claimant can understand, remember, and carry out simple instructions.  The claimant can make judgments on simple work-related decisions.  The claimant can interact appropriately with supervisors.  The claimant can work independent from co-workers, although he can be around co-workers. The claimant can tolerate occasional public contact.  The claimant can respond appropriately to the usual work situations and changes in a routine work setting.
>
> 6. [Step 4] Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. [Step 5] The claimant was born [in] 1964 and was 50 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. [Step 5, continued] Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. [Step 5, continued] Through the dated [sic.] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 21, 2010, the alleged onset date, through December 31, 2014, the date last insured (20 CFR 404.1520(g)).

AR 31-41.

As noted, the ALJ concluded that plaintiff was "not disabled" under Section 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 41.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to properly weigh and credit the medical opinions of plaintiff's treating physician, and failing to articulate specific and legitimate reasons for discounting those opinions; (2) failing to present germane reasons for discrediting the opinion of plaintiff's physical therapist; (3) discounting plaintiff's subjective testimony; and (4) discounting lay witness testimony regarding the nature and impact of his functional limitations without articulating a germane reason for doing so. ECF No. 17 at 4.

A. The ALJ Properly Weighed the Opinion Evidence

1. The Medical Opinion Evidence

The record before the ALJ included the medical opinions of plaintiff's treating physician, El-Hadi Mouderres, M.D.; physical therapist, Scott Fuqua; evaluating neurologist, B. Barry Chehrazi, M.D., F.A.C.S.; orthopedic consultative examiner, John Chang, M.D.; and two State

////

agency medical consultants, Leslie E. Arnold, M.D. and M. Tambellini, M.D.[4]

Dr. Mouderres opined that plaintiff can walk one city block without rest or severe pain; that he can sit and stand/walk for less than two hours per eight-hour workday; that he can rarely lift and carry 10 pounds; that he can never twist, stoop, or crouch; and that he has significant limitations in doing repetitive reaching, handling, and fingering. AR 423-27. In contrast, Drs. Arnold and Tambellini found that plaintiff could sit and stand or walk for six hours per eight-hour workday; that he can frequently lift and carry 10 pounds; that he can occasionally crawl and kneel, frequently stoop, and had an unlimited ability to crouch; and that he has no limitations in fingering, handling, or feeling. AR 102-104 (Arnold evaluation); AR 119-120 (Tambellini evaluation). They each found exertional, postural, and manipulative limitations significantly less severe than those identified by Dr. Mouderres. See id.

The ALJ gave "significant weight" to the assessments of Drs. Arnold and Tambelli, AR 37, and "little weight" to the opinion of Dr. Mouderres, AR 38. The ALJ also gave "little weight" to the opinion of the physical therapist. AR 39.[5]

The medical record also included a report by Dr. Chehrazi, a neurologist who evaluated plaintiff around the amended alleged onset date of February 2014. He found that plaintiff's restricted range of motion was "severely out of proportion" with expectation based on his radiological studies. AR 418. He noted that plaintiff's neurological exam was without focal deficit. AR 419. Dr. Chehrazi recommended "attention to treatment of his underlying depression and anxiety" and "conservative symptomatic treatment with physical therapy" for plaintiff's range of motion and pain complaints. AR 419.

2. Principals Governing the ALJ's Consideration of Medical Opinion Evidence

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996). "Those physicians with the most significant clinical relationship with the claimant are

---

[4] The record also included psychological assessments from two State agency medical consultants, L. Colsky, M.D. and Jan Jacobsen, Ph.D., and a psychological consultative examiner, Lenore Tate, Ph.D. AR 37-39. These are not at issue here.

[5] She accorded "some weight" to the opinion of Dr. Chang. AR 39.

generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted).

If a treating physician's opinion is not contradicted by another doctor, it may only be rejected for clear and convincing reasons supported by substantial evidence. Orn, 495 F.3d at 632 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). "The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). However, when the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another physician, he must give "specific and legitimate reasons" for doing so. Regennitter v. Comm'r., 166 F.3d 1294, 1298-99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

### 3. Analysis of Medical Opinions

#### i. Plaintiff's Treating Physician, Dr. Mouderres

Plaintiff contends that the ALJ erred by disregarding the opinion of Dr. Mouderres, plaintiff's treating physician, without providing specific and legitimate reasons supported by substantial evidence in the record. ECF No. 17 at 4, 16.[6] The court finds no error.

The ALJ gave little weight to the opinion of Dr. Mouderres, finding it inconsistent with "the medical evidence of record and his own treatment notes." AR 38. The ALJ pointed to several inconsistencies to support this conclusion, including: (1) Dr. Mouderres advised the plaintiff to "continue with his same treatment as he reported great improvement with pool therapy

---

[6] Dr. Mouderres's opinions are located at AR 423-27, 428-29, and 437-44.

and wrist braces;" (2) Dr. Chehrazi, a neurologist who had previously evaluated plaintiff, found that plaintiff's "cervical and lumbar range of motion restriction appeared to be significantly out of proportion with expectation and noted his neurological examination was without focal deficit;" and (3) Dr. Chehrazi and Dr. Mouderres both recommended only conservative treatment, which was "inconsistent" with Dr. Mouderres's assessment of significant limitations. AR 39.

A conservative treatment history may be a legitimate basis for an ALJ to discount a treating physician's opinion regarding the severity of symptoms. See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (plaintiff responded favorably to conservative treatment, including physical therapy, which undermined his reports regarding the "disabling nature" of his pain); see also Hanes v. Colvin, 651 F. App'x 703, 705 (9th Cir. 2016) (finding ALJ gave "specific and legitimate reasons" for discounting opinions of treating physicians whose opinions were inconsistent with plaintiff's conservative treatment and positive response to that treatment). In this case, plaintiff has managed his pain primarily with medication, wrist braces, and physical therapy. AR 68. While plaintiff has not availed himself of steroidal injections, which Dr. Mouderres suggested he consider receiving twice a week, he tried pool therapy for three or four months and remains in pain management. AR 68. Dr. Chehrazi confirmed that "conservative symptomatic treatment with physical therapy" was the recommended course of action for plaintiff and that plaintiff is not a surgical candidate. AR 419. Each of these facts undermine Dr. Mouderres's opinion regarding the severity of plaintiff's condition. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (affirming ALJ's rejection of treating physician's opinion, in part, because a "conservative course of treatment . . . [is] not the sort of . . . recommendation[] one would expect to accompany a finding that [the plaintiff] was totally disabled under the Act."); see also Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) ("[Plaintiff's] claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received."). The undersigned finds no error in the ALJ's reasoning in this regard.

The ALJ also permissibly relied on inconsistencies between Dr. Mouderres's opinion and Dr. Chehrazi's findings. Plaintiff contends that the ALJ erred in identifying an inconsistency,

ECF No. 17 at 18, but the court disagrees. The ALJ pointed to two specific differences between Dr. Mouderres's opinion and Dr. Chehrazi's report: (1) Dr. Chehrazi found that plaintiff's restricted cervical and lumbar range of motion was significantly out of proportion with expectation based on the radiological studies, and (2) Dr. Chehrazi's neurological examination revealed no focal deficit and the cervical and lumbar spine MRI studies revealed no significant pathology. AR 419. These findings are indeed inconsistent with Dr. Mouderres's conclusion that plaintiff had chronic and extreme physical limitations that would require plaintiff to miss at least four days of work per month. AR 423-27. It is the ALJ's province to resolve such conflicts in the medical evidence. Winans, 853 F.2d at 647. The undersigned finds no error in this aspect of the ALJ's analysis.

Because plaintiff's conservative course of treatment and the identified inconsistencies with Dr. Chehrazi's findings constitute specific and legitimate reasons for the ALJ's rejection of Dr. Mouderres's opinion, supported by substantial evidence in the record, the court need not address plaintiff's objection regarding the September 25, 2015 treatment note. See ECF No. 17 at 26. Any error would be harmless in light of the independent permissible grounds for rejecting the opinion of the treating physician.

### ii. Plaintiff's Physical Therapist, Scott Fuqua

The ALJ assigned little weight to the opinion of Scott Fuqua, a physical therapist, who assessed limitations more restrictive than those found by the agency consultants. AR 39. The ALJ concluded that Fuqua's opinion was "overly restrictive" and unsupported by the medical evidence. Id. Specifically, she noted that the physical therapist's assessment was inconsistent with the conservative treatment ordered by Drs. Chehrazi and Mouderres. Id. Plaintiff contends that the ALJ erred, but the court disagrees.

Physical therapists are classified as an "other source" of evidence. 20 C.F.R. § 404.1513(a)(3). To discredit the opinion of an "other source," the ALJ must provide a germane reason for discrediting that particular source. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). Inconsistency with medical evidence of record is typically a "germane" reason. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)

("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.")

As discussed above in regard to Dr. Mouderres, conservative treatment history and failure to seek medical treatment are legitimate bases for an ALJ to discount testimony regarding the severity of symptoms. See Tommasetti, 533 F.3d at 1039. The ALJ's conclusion that the conservative treatment pursued in this case is inconsistent with the severe limitations assessed by Mr. Fuqua is supported by substantial evidence in the record. Compare AR 68 (plaintiff's testimony regarding conservative pain management methods); AR 418 (Dr. Chehrazi's opinion that plaintiff does not require surgery); AR 62 (plaintiff's testimony that he manages pain with medication); with AR 520 (Mr. Fuqua's opinion that plaintiff could walk half a city block without rest or severe pain and was likely to miss more than four days per month of work). The undersigned finds no error in the ALJ's reasoning because the ALJ provided a sufficiently germane reason for discounting the opinion of Mr. Fuqua in this case.

### B. The ALJ Improperly Discounted Plaintiff's Subjective Testimony

The ALJ erred in her treatment of plaintiff's subjective testimony, and remand for further development of the record is required. Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. Id. (internal citations omitted). Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." Id. (internal citations omitted). While an ALJ's credibility finding must be properly supported and sufficiently specific to assure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is not "required to believe every allegation" of

disability. Fair v. Brown, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

Plaintiff testified that since his alleged onset date, his neck pain has worsened and that therapy has provided no relief. AR 34, 52, 68. The ALJ noted that plaintiff testified he can drive fewer than 1,000 miles per year due to difficulty turning his neck and he is unable to stand for 30 minutes without pain. AR 34, 52. The ALJ acknowledged plaintiff's testimony that, due to knee problems, he can only be on his feet for three hours in an eight-hour work day, and that he can sit for only half an hour before needing to move around. AR 34, 69. The ALJ also acknowledged plaintiff's testimony related to his mental health symptoms, and altercations with others. AR 34, 64. The ALJ omitted some of plaintiff's other testimony related to mental health, such as his statements regarding outbursts at home. AR 67. The ALJ found that plaintiff's statements "concerning the intensity, persistence, and limiting effects of [his symptoms] are not entirely credible." AR 37. The ALJ acknowledged plaintiff's general compliance with medication, as well as his established work history. Id. She concluded that the weight of the evidence showed that "while [plaintiff] may experience some level of pain and psychiatric symptoms, it is well-controlled and he could nonetheless perform a wide range of unskilled light exertional work." Id. Plaintiff alleges that the ALJ erred in discounting his subjective testimony. ECF No. 17 at 35.

As a preliminary matter, the ALJ concluded that plaintiff had presented objective medical evidence of an underlying impairment that that could reasonably be expected to cause the alleged symptoms. AR 37. Nevertheless, while the ALJ did not mention any concerns about malingering, she ultimately concluded that plaintiff's statements were not credible. Id. The ALJ's reasons for discounting plaintiff's subjective testimony are legally insufficient because she failed to identify the statements she found non-credible and link them with the parts of the record that support her conclusion. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); see Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014) (finding legal error where ALJ failed to identify and link testimony she found not credible to the parts of the

12

record that supported an adverse credibility determination). The ALJ's blanket statement that the "weight of the evidence remains to show that [plaintiff's condition] is well-controlled" does not suffice. AR 37. To the extent the ALJ found that plaintiff's statements specifically contradicted his subjective testimony, the analysis is lacking. The ALJ does not explain how the medical record and plaintiff's statements create an inconsistency. Id. The ALJ erred in discrediting plaintiff with such limited support for doing so.

### C. The ALJ Improperly Discounted Ms. Mannina's Lay Witness Statements

The ALJ considered a lay witness statement and a third-party function report submitted by plaintiff's mother, Sandra Mannina.[7] The ALJ declined to give significant weight to Ms. Mannina's statements regarding plaintiff's medical conditions and functional limitations. AR 39. The ALJ found these statements "less than credible" because (1) Ms. Mannina is not medically trained to "make exacting observations as to the date, frequencies, types, and degrees of medical signs and symptoms, or the frequency or intensity of unusual moods or mannerisms," and (2) due to their mother-son relationship, Ms. Mannina was not a disinterested party and her statements were at risk for bring colored by affection for her son. AR 39. Plaintiff argues that the Ninth Circuit and social security law has specifically allowed and encouraged the use of statements from lay persons like family members to supplement medical records, and an ALJ may not dismiss the testimony of a family member solely on the basis of bias. ECF No. 17 at 37.

An ALJ must take into account lay testimony as to a plaintiff's symptoms unless she provides reasons germane to the witness for disregarding it. Lewis v. Apfel, 236 F.3d 505, 511 (9th Cir. 2001) ("Lay testimony as to claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

The ALJ's concern over Ms. Mannina's potential bias as an interested party is misplaced, and cannot be considered a germane reason for dismissing Ms. Mannina's statements. "The fact that a lay witness is a family member cannot be a ground for rejecting his or testimony. To the

---

[7] Sandra Mannina's statements are located at AR 221-29, 251.

contrary, testimony from lay witnesses who see the claimant every day is of particular value; . . . such lay witnesses will often be family members." Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996); see Robbins v. Social Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (finding reversible error where ALJ failed to account for testimony of claimant's son that offered "eyewitness evidence supporting his father's claims as to functional limitations and severity of pain"). The Ninth Circuit has explicitly held that "family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his] condition." Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ recognized Ms. Mannina's prior opportunities to observe her son and acknowledged that they lived together, but concluded that her statements would "tend to be colored by affection" for her son. AR 39. This conclusion is not supported by any evidence in the record, nor is it explained or justified by the ALJ. The ALJ appears to rest her conclusion on the presumption that Ms. Mannina was biased because of her close relationship with her son, and as a result, was unable to offer accurate and truthful statements. This is not a permissible reason for discrediting her testimony.

Defendant cites Greger v. Barnart, 464 F.3d 968, 972 (9th Cir. 2006) for the proposition that a lay witness's close relationship with and desire to help the claimant is a proper basis for rejecting that lay witness's testimony. In Greger, the plaintiff's former girlfriend submitted an affidavit attesting to plaintiff's fatigue and shortness of breath following surgery. The ALJ rejected this testimony on two bases: (1) her statements were inconsistent with the claimant's presentation to treating physicians during the period in question and also with plaintiff's failure to participate in rehabilitation; and (2) her close relationship suggested she might be influenced by a desire to help the plaintiff. Greger does not provide that a close relationship, *standing alone*, is a germane reason for dismissing lay witness testimony. Additionally, this case is distinguishable from Greger because the ALJ here did not find that Ms. Mannina's statements were inconsistent with medical evidence of record, or even with the medical-opinion evidence. Instead, the ALJ merely focused on her relationship with the plaintiff and the lack of medical training. Because of these factual differences, Greger is not directly applicable to the case at hand.

////

14

Second, the fact that Ms. Mannina does not have medical training to make "exacting observations as to the date, frequencies, types, and degrees of medical signs and symptoms" of her son is not a germane reason for discrediting her testimony. In Dodrill v. Shalala, the Ninth Circuit criticized an ALJ's "mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms." 12 F.3d 915, 918 (9th Cir. 1993). The court explained the value in eyewitness testimony the ALJ appeared to have overlooked: "An eyewitness can often tell whether someone is suffering or merely malingering. . . . [T]his is particularly true of witnesses who view the claimant on a daily basis." Id. Here, Ms. Mannina's statements revolved around her first-hand observations from living with plaintiff, not any diagnosis or evaluation of the medical reasons for what she saw. For example, Ms. Mannina observed that "[t]he simplest of household tasks . . . will take him all day because he will have to stop and rest" (AR 251), "he can't stand for long periods of time" (AR 223), he occasionally watches television and plays solitaire (AR 225), he "can't lift heavy grocery bags" (AR 226), and he "wears his neck brace most of the time and uses the cane sometimes when walking" (AR 227). The ALJ fails to demonstrate how any of Ms. Mannina's observations would require medical expertise, and her rationale for discounting Ms. Mannina's testimony was not germane to the witness.

### D. Remand for Further Consideration is Necessary

As discussed above, the ALJ erred by (1) discounting plaintiff's subjective testimony and (2) discrediting Ms. Mannina's lay witness testimony. The undersigned agrees with plaintiff that the ALJ's errors are harmful and remand for further proceedings by the Commissioner is necessary. An error is harmful when it has some consequence on the ultimate non-disability determination. Stout v. Comm'r, Soc. Sec. Admin, 454 F.3d 1050, 1055 (9th Cir. 2006). Plaintiff's subjective testimony and Ms. Mannina's lay witness statements, properly considered, may very well result in a more restrictive residual functional capacity assessment, which may in turn alter the finding of non-disability. It is for the ALJ to determine in the first instance whether plaintiff has severe impairments and, ultimately, whether he is disabled under the Act. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and

the Commission of the Social Security Administration in the first instance, not with the district court"). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2014). Further development of the record consistent with this order is necessary, and remand for further proceedings is the appropriate remedy.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20), is DENIED;

3. This matter is REMANDED to the Commissioner for further consideration consistent with this order; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: February 4, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE